UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

REPUBLIC FRANKLIN INSURANCE CO.,

    *Plaintiff*,

v.

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,

    *Defendant*.

CIVIL ACTION NO.

# COMPLAINT

The plaintiff, Republic Franklin Insurance Company (part of the Utica National Insurance Group, and hereafter referred to as "Utica"), by way of Complaint against the defendant Travelers Casualty Insurance Company of America ("Travelers"), states and alleges as follows.

## INTRODUCTION

1. Utica and Travelers each issued one or more policies of liability insurance to the same insured, The Borden-Perlman Insurance Agency, Inc. ("B-P"), a New Jersey corporation. On May 31, 2013, B-P was sued by Orchestrate HR, Inc. for defamation and other claims ("Underlying Litigation"). The Underlying Litigation triggered coverage under both Utica's and Travelers' policies, thereby requiring each insurer to provide B-P with a defense and indemnity. Travelers, however, wrongly refused to provide B-P with a defense or indemnity of the Underlying Litigation. Utica, by contrast, fully satisfied its obligations to B-P, incurring significant defense costs and making a large indemnity payment to settle the Underlying Litigation on behalf of the parties' common insured, B-P. Despite demand which has been and is

hereby made, Travelers wrongfully refuses to reimburse Utica any portion of the defense costs and indemnity payments that Utica incurred and made on behalf of B-P. Utica files this action seeking, among other things, a declaration that Travelers had a duty to defend and indemnify B-P in the Underlying Litigation, such that Travelers must reimburse Utica all or a portion of the total amount expended by Utica on behalf of B-P.

## PARTIES

2. Utica is a New York corporation with a principal place of business in Utica, New York, and at all times relevant was authorized to transact, and did transact, business in New Jersey.

3. Travelers is a Connecticut corporation with a principal place of business in Hartford, Connecticut, and at all times relevant was authorized to transact, and did transact, business in New Jersey.

## JURISDICTION AND VENUE

4. This Court has diversity jurisdiction because the parties are "citizens" of different states, and the amount in controversy exceeds $75,000.

5. Venue in this Court is proper because a substantial part of the events or omissions giving rise to Utica's claims occurred in the State of New Jersey, where each party issued a policy of insurance to B-P, and because B-P is a corporation of the State of New Jersey.

## ALLEGATIONS COMMON TO ALL COUNTS

### *The Policies of Insurance*

6. Utica issued to B-P a claims-made policy of professional liability insurance, policy number 3735507 EO, for the policy period January 1, 2013 to January 1, 2014. ("Utica

Policy"). The Utica Policy provided limits of $5,000,000 per loss, and $6,000,000 in the aggregate. A true copy of the Utica Policy is attached at Exhibit 1.

7. Travelers issued to B-P an occurrence based "Office PAC" policy of insurance, policy number 680-6C420563-13-42, for the policy period January 1, 2013 to January 1, 2014. ("Travelers Primary Policy"). The commercial general liability section of the Travelers Primary Policy provided limits for personal injury of $1,000,000 per occurrence, and $2,000,000 in the aggregate. A true copy of the commercial general liability portion of Travelers Primary Policy, including all common policy provisions, is attached at Exhibit 2.

8. Travelers also issued to B-P an occurrence based umbrella policy of insurance, policy number CUP-6C424875-13-42, for the policy period January 1, 2013 to January 1, 2014. ("Travelers Umbrella Policy"). The Travelers Umbrella Policy provided limits for personal injury of $4,000,000 per occurrence and in the aggregate. A true copy of the Travelers Umbrella Policy is attached at Exhibit 3.

9. The Travelers Primary Policy and Travelers Umbrella Policies are hereinafter referred to collectively as the "Travelers Policies."

*The Underlying Litigation Against The Parties' Common Insured, B-P*

10. On May 31, 2013, Orchestrate HR, Inc. ("Orchestrate") filed the initial complaint in the Underlying Litigation against B-P and B-P's employee, Anthony L. Trombetta, in Texas state court ("Complaint"). A true copy of the Complaint is attached at Exhibit 4. On June 5, 2013, the Underlying Litigation was removed to the United States District Court for the Northern District of Texas, and assigned Civil Action Number 3:13-cv-02110.

11.     The Complaint alleged that Mr. Trombetta worked for Orchestrate through April 8, 2013, at which time he terminated his employment and began working in Pennsylvania for B-P, which "provides insurance products to the same target market as Orchestrate." (Exhibit 4, ¶¶ 2, 23-24).

### *The Defamation Claim Against B-P in the Underlying Litigation*

12.     The Complaint included a section concerning Orchestrate's allegation that B-P and Mr. Trombetta defamed Orchestrate. That fact section was set-off by a caption titled: "BP and Trombetta defame Orchestrate to its most important clients, attacking Orchestrate's integrity and credibility." (Exhibit 3, p. 11).

13.     The Complaint alleged that Mr. Trombetta and B-P, during the six months prior to filing, "engaged in a concerted effort to defame Orchestrate to its client base, targeting Orchestrate's most important clients." (Exhibit 4, ¶ 33).

14.     The Complaint alleged that B-P and Mr. Trombetta, in order to solicit Orchestrate's clients, "communicated a variety of false and misleading statement to numerous universities [that] Orchestrate services . . ." (Exhibit 4, ¶ 34). The alleged false and misleading statements included: "(1) Orchestrate is not timely processing insurance claims; (2) Orchestrate is not providing the discounts it is promising; (3) Orchestrate is using incorrect insurance forms; and (4) insurers are not 'allowed' to use Orchestrate." (Exhibit 4, ¶ 35).

15.     The Complaint further alleged: "Defendants' defamatory accusations of Orchestrate to its client base have the immediate effect of destroying Orchestrate's reputation, goodwill, and customer confidence, as Orchestrate's business relationships may be permanently damaged." (Exhibit 4, ¶ 38).

16. The Complaint did not allege that B-P or Mr. Trombetta defamed Orchestrate in the course of providing professional services.

17. The Complaint, at Count "E," asserted a defamation claim against B-P and Mr. Trombetta based on the foregoing factual allegations. (Exhibit 4, ¶ 54).

18. Orchestrate subsequently amended the Complaint in the Underlying Action. A true copy of the Third Amended Complaint, which was the final operative complaint, is attached at Exhibit 5. In the Third Amended Complaint, Orchestrate's affiliate, Vivature, Inc. ("Vivature") joined as a plaintiff. Also in the Third Amended Complaint, Orchestrate and Vivature added as defendants two additional B-P employees, Kelly Myers and Dave Icenhower, who were alleged to reside in New Jersey. (Exhibit 5, ¶¶ 5-6)..

19. In the Third Amended Complaint, Orchestrate and Vivature asserted a defamation claim against B-P, Mr. Trombetta, Mr. Myers, and Mr. Icenhower.[1] The factual allegations concerning the defamation claim in the Third Amended Complaint were identical to the factual allegations in the Complaint, detailed above. The Third Amended Complaint, like the Complaint, did not allege that the defendants defamed Orchestrate in the course of providing professional services. Rather, the Third-Amended Complaint alleged that the purpose of the allegedly defamatory statements was to solicit Orchestrate's "most important clients." (Exhibit 5, ¶ 38).

### *The Defamation Claim Represented a Significant Risk of Loss to Travelers*

---

[1] The Third-Amended Complaint, like the Complaint, included many causes of action that were not covered by the Utica Policy, including claims for breach of a confidentiality agreement against Mr. Trombetta, breach of a non-compete agreement against Mr. Trombetta, tortious interference with contract against all defendants, tortious interference with prospective business relations against all defendants, unfair competition against B-P, and fraud against B-P and Mr. Myers. Exhibit 5, pp. 14-19.

20. On June 3, 2013, B-P timely notified Travelers of Orchestrate's allegations in the Underlying Litigation, and provided Travelers with a copy of the Complaint.

21. The Travelers Primary Policy expressly provided that it was primary insurance, even if other valid and collectible insurance was available to B-P. The Utica Policy, by contrast, expressly provided that it was excess insurance in the event other valid and collectible insurance was available to B-P. Thus, if Travelers acknowledged that the Travelers Primary Policy provided coverage for the Underlying Litigation, Travelers was at risk of paying the entirety of the defense costs incurred in the Underlying Litigation.

22. The defamation claim asserted in the Underlying Litigation constituted multiple occurrences. Thus, if Travelers acknowledged that the Travelers Primary Policy provided coverage for the Underlying Litigation, Travelers was at risk of paying out the $2,000,000 aggregate limits in the Travelers Primary Policy, and potentially an additional amount under the Travelers Umbrella Policy.

*Travelers Wrongfully Denied Coverage*

23. The commercial general liability section of the Travelers Primary Policy contained a "Coverage B" insuring agreement, providing in relevant part as follows.

> COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY
>
> 1. Insuring Agreement.
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. . . .

6

24. The Travelers Primary Policy, in an endorsement, amended "personal and advertising injury" to mean "personal injury" or "advertising injury."

25. The Travelers Umbrella Policy similarly provided coverage for "personal injury."

26. The Travelers Policies defined the term "personal injury" identically, and in relevant part, as follows:

> [I]njury, other than 'advertising injury', caused by one or more of the following offenses: . . .
>
> (4) Oral or written publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or 'suit' is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged . . .

27. The defamation claim asserted in the Underlying Litigation constituted an alleged "personal injury" as that term is defined by the Travelers Policies. Moreover, the actions or "occurrences" that formed the basis of the defamation claim took place during the policy period covered by the Travelers Policies.

28. On June 24, 2013, Travelers wrongfully denied coverage for the Underlying Litigation, refusing to provide a defense or indemnity. A true copy of Travelers' denial of coverage, sent to B-P's place of business in New Jersey, is attached at Exhibit 6.

29. Travelers denied coverage principally on the ground that the "Financial Professional Services Exclusion" in the Travelers Policies applied.

30. The Travelers Policies each contained an identical "Financial Professional Services Exclusion," added by an endorsement, and providing in relevant part as follows.

    2.    The following exclusion is added to Paragraph 2., Exclusions, of SECTION I – COVERAGES – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:

**Financial Professional Services**

"Personal injury" or "advertising injury" arising out of providing or failing to provide "financial professional services" by any insured to others.

Thus with the endorsement, the Travelers Policies provided: "This insurance does not apply to: . . . 'Personal injury' . . . arising out of providing or failing to provide 'financial professional services' by any insured to others."

    31.    The Travelers Policies defined "financial professional services" in relevant part as follows.

"Financial professional services" includes any of the following professional services:

. . .

k.    With respect to any contract or treaty of insurance . . ., including any application, receipt or binder:

    (1)    Assuming any obligation;

    (2)    Discharging any obligation or duty, contractual or otherwise;

    (3)    Advising, inspecting, reporting or making any recommendation;

    (4)    Effecting coverage; or

    (5)    Investigating, defending, handling, adjusting or settling any claim or "suit";

    32.    The denial of coverage by Travelers was wrongful because the Financial Professional Services Exclusion did not apply to the defamation claim. Orchestrate did not assert that the alleged defamation arose out of B-P's "providing . . . professional services . . . to others," or that B-P defamed Orchestrate "[w]ith respect to any contract or treaty of insurance." Rather,

Orchestrate alleged that B-P defamed it in an attempt to solicit business – *i.e*., to "target Orchestrate's most important clients." (Exhibit 4, ¶ 33).

33. The Financial Professional Services Exclusion also did not apply because Orchestrate in the Underlying Litigation did not allege that B-P defamed Orchestrate with respect to "any application, receipt or binder" of insurance.

34. The Financial Professional Services Exclusion also did not apply because Orchestrate did not allege that B-P defamed it in the course of B-P's: "(1) Assuming any obligation; (2) Discharging any obligation or duty, contractual or otherwise; (3) Advising, inspecting, reporting or making any recommendation; (4) Effecting coverage; or (5) Investigating, defending, handling, adjusting or settling any claim or 'suit'."

35. After Travelers wrongfully denied coverage, it declined to provide B-P with a defense, or to have any other involvement with the Underlying Litigation.

*Utica Provided Coverage and Put Travelers on Notice*

36. Utica provided B-P and its employees with a defense, and incurred significant defense costs.

37. On February 1, 2017, Utica through its counsel notified Travelers that the trial of the Underlying Litigation was scheduled to begin on February 6, 2017. A true copy of the correspondence is attached at Exhibit 7.

38. Utica in its correspondence advised Travelers that it had reviewed Travelers' denial of coverage to B-P for the Underlying Litigation, and that the denial of coverage was wrongful. Utica cited to a decision issued in a different case, involving an affiliated Travelers company, wherein the United States District Court for the District of Maryland determined the

identical Financial Professional Services Exclusion did not apply to similar facts alleged in the Underlying Litigation, and concluded that indeed Travelers had breached its duty to defend its insured. (Exhibit 7, citing Warfield-Dorsey Co., Inc. v. Travelers Casualty & Sur. Co. of Illinois, 66 F.Supp.2d 681 (D.Md. 1999)).

39. Utica in its correspondence to Travelers advised that Utica had incurred significant attorneys' fees and costs in the defense of B-P in the Underlying Litigation, and that it faced the possibility of having to indemnify B-P. Utica further asserted that the expenses and costs that had been, and would be, incurred on behalf of B-P in connection with the Underlying Litigation should be shared by Travelers.

40. On or about February 6, 2017, Utica and B-P settled the Underlying Litigation. As part of that settlement, Utica made a significant indemnity payment in exchange for the dismissal and release of all claims against B-P in the Underlying Litigation. On or about March 3, 2017, Utica through its counsel notified Travelers that the Underlying Litigation had settled.

41. On or about April 11, 2017, Travelers again denied coverage for the claims against B-P under the Travelers Policies, and refused to make any reimbursement to Utica. (Exhibit 8).

### B-P Assigned Its Rights To Utica

42. Utica and B-P, effective April 5, 2017, entered into an agreement that, among other things, assigned B-P's rights under the Travelers Policies to Utica ("Assignment"). The Assignment provides in relevant part as follows.

> . . . [T]he BP Parties hereby assign and transfer to Utica all of their right, title, and interest in and under the Travelers Primary Policy and the Travelers Umbrella Policy to any claims or rights with respect to Travelers' duty to defend and/or indemnify the BP

> Parties in the [Underlying Litigation], including without limitation all rights of the BP Parties to a defense (including reimbursement of attorneys' fees and related litigation expenses) and indemnity . . .

## COUNT ONE
### Declaratory Judgment

43. Utica incorporates by reference the allegations contained above in paragraphs 1 through 42 as though fully set forth herein.

44. An actual case or controversy exists as to whether the Travelers Policies provided coverage to B-P for defense and/or indemnity in the Underlying Litigation, as to whether Travelers is required to reimburse Utica all or a portion of the sums expended by Utica on behalf of B-P in the Underlying Litigation, and the amount that Travelers is required to reimburse Utica.

45. Utica is entitled to a judgment declaring that the Travelers Policies provided coverage, including without limitation both defense and indemnity, for B-P in the Underlying Litigation, that Travelers is required to reimburse Utica all or a portion of the sums expended by Utica on behalf of B-P in the Underlying Litigation, and the amount that Travelers is required to reimburse Utica.

## COUNT TWO
### Breach of Contract

46. Utica incorporates by reference the allegations contained above in paragraphs 1 through 42 as though fully set forth herein.

47. The Travelers Policies were binding contracts.

48. The Travelers Policies were issued by Travelers in exchange for valuable consideration.

49. B-P performed all obligations required of it under the Travelers Policies.

50. Travelers' failure to provide B-P with a defense and indemnity of the Underlying Litigation constitutes a breach of the Travelers Policies, including but not limited to a breach of the covenant of good faith and fair dealing.

51. As a result of Travelers' breach of the Travelers Policies, B-P has suffered harm in an amount to be proven at trial.

52. As B-P's assignee, Utica is entitled to recover from Travelers for all damages incurred by B-P as a result of Travelers' breach of the Travelers Policies.

## COUNT THREE
Equitable Contribution

53. Utica incorporates by reference the allegations contained above in paragraphs 1 through 42 as though fully set forth herein.

54. Utica and Travelers were co-insurers of B-P.

55. The Utica Policy and Travelers Policies provided coverage for the defamation claims against B-P in the Underlying Litigation.

56. Utica provided B-P with a defense and indemnity of the Underlying Litigation, but Travelers did not.

57. Utica paid a disproportionate share of the defense and indemnity costs incurred in the Underlying Litigation.

58.     Travelers' failure to pay its share of the defense and indemnity costs incurred in the Underlying Litigation is inequitable, and has caused Utica harm in an amount to be proven at trial.

## COUNT FOUR
### Contractual Subrogation

59.     Utica incorporates by reference the allegations contained above in paragraphs 1 through 42 as though fully set forth herein.

60.     The Utica Policy contains a contractual right of subrogation of recovery from B-P to Utica, as follows.

> 4.      Transfer Of Rights Of Recovery Against Others To Us
>
> If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after a "wrongful act" to prejudice such rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. Any amounts recovered will be applied to reduce the amount we paid for "loss" and expense (after application of the deductible) before being applied to reduce your deductible.

61.     Travelers wrongfully refused to provide B-P with a defense or indemnity in the Underlying Litigation, thereby harming B-P and increasing the defense and indemnity payments made by Utica.

62.     B-P has the right to recover from Travelers all or a portion of the payments Utica made under the Utica Policy.

63.     Pursuant to the contractual right of subrogation set forth in the Utica Policy, B-P's right to recover from Travelers all or a portion of the payments Utica made under the Utica Policy have been transferred to Utica.

64. As B-P's subrogee, Utica is entitled to recover from Travelers all or a portion of the payments Utica made under the Utica Policy.

## COUNT FIVE
Equitable Subrogation

65. Utica incorporates by reference the allegations contained above in paragraphs 1 through 42 as though fully set forth herein.

66. Utica paid a debt for which Travelers was primarily liable.

67. Utica's payment of the debt of Travelers was made involuntarily.

68. Utica's payment of a debt for which Travelers primarily was liable, and Travelers' failure to reimburse Utica all or a portion of the payment Utica made, is inequitable.

## COUNT SIX
Unjust Enrichment

69. Utica incorporates by reference the allegations contained above in paragraphs 1 through 42 as though fully set forth herein.

70. Travelers has been unjustly enriched by having received and retained the benefit of Utica's payment of a debt for which Travelers was liable.

WHEREFORE, Republic Franklin Insurance Company demands judgment against Travelers Casualty Insurance Company of America, as follows:

(a) Entry of judgment on Count One as follows: "It is hereby DECLARED and ADJUDGED that Travelers Casualty Insurance Company of America Policy, under Policy No. 680-6C420563-13-42 and Policy No. CUP-6C424875-13-42, owed a duty to defend and indemnify Borden-Perlman Insurance Agency, Inc. in and from the defamation claim asserted against it by Orchestrate HR, Inc. and/or Vivature, Inc. in that action originally known as

<u>Orchestrate HR, Inc. v. The Borden-Perlman Insurance Agency, Inc., et al.</u>, 192nd Judicial District, Dallas County, Texas, Civil Action No. DC13-05990, and after removal known as <u>Orchestrate HR, Inc., et al. v. The Borden-Perlman Insurance Agency, Inc.</u>, U.S. District Court, Northern District of Texas, 3:13-cv-02110";

      (b)      Entry of judgment on Count One declaring that Travelers is required to reimburse Utica all or a portion of the sums expended on behalf of B-P in the Underlying Litigation, and setting forth the amount of said reimbursement owed;

      (c)      Entry of judgment on Count Two awarding Utica, as assignee of B-P, monetary damages incurred as a result of Travelers' breach of the Travelers Policies;

      (d)      Entry of judgment on Count Three awarding Utica monetary damages it incurred as a result of its paying a disproportionate share of the defense and/or indemnity costs on behalf of B-P in the Underlying Action;

      (e)      Entry of judgment on Count Four awarding Utica, as subrogee of B-P, monetary damages incurred as a result of Travelers' failure to pay its share of the defense and/or indemnity costs incurred on behalf of B-P in the Underlying Action;

      (f)      Entry of judgment on Count Five awarding Utica monetary damages it incurred as a result of its paying a disproportionate share of the defense and/or indemnity costs on behalf of B-P in the Underlying Action;

      (g)      Entry of judgment on Count Six awarding Utica monetary damages it incurred which unjustly enriched Travelers by and to the extent of Utica's payment of debts which were justly due from Travelers;

(h) Pursuant to applicable law, award Utica its attorneys' fees incurred herein to establish coverage under the Travelers Policies;

(h) Award Utica pre-judgment and post-judgment interest;

(i) Award Utica its costs and expenses; and

(i) Such other relief as is just and appropriate.

Dated: June 22, 2017

    REPUBLIC FRANKLIN INSURANCE CO.,
    By its attorneys,

    */s/ Steven A. Weiner*

    _____
    Steven A. Weiner
    Peter V. Koenig
    O'Toole Scrivo Fernandez Weiner Van Lieu, LLC
    14 Village Park Road
    Cedar Grove, NJ 07009
    (973) 239-5700

    Russell F. Conn (Mass. BBO# 094440)
      *Application for Admission pro hac vice to be submitted*
    Kurt B. Fliegauf (Mass. BBO# 564329)
      *Application for Admission pro hac vice to be submitted*
    Conn Kavanaugh Rosenthal Peisch & Ford, LLP
    Ten Post Office Square
    Boston, MA 02109
    (617) 482-8200
    RConn@ConnKavanaugh.com
    KFliegauf@ConnKavanaugh.com