IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ORCHESTRATE HR, INC. and VIVATURE, INC. | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:13 CV-2110-P |
| ANTHONY L. TROMBETTA, THE BORDEN-PERLMAN INSURANCE AGENCY, INC., KELLY MYERS, and DAVE ICENHOWER, | § § § § § | |
| Defendants. | § § | |

## PLAINTIFFS' THIRD AMENDED COMPLAINT

Plaintiffs Orchestrate HR, Inc. ("OrchestrateHR") and Vivature, Inc. ("Vivature") (collectively, "Plaintiffs or "Orchestrate") file this, their Third Amended Complaint and respectfully show as follows:

### I.    PARTIES

1.    Plaintiff OrchestrateHR is a Texas corporation which may be contacted by and through its attorney, Jose M. Portela, THE BECKHAM GROUP, 3400 Carlisle, Ste. 550, Dallas, Texas 75204.

2.    Plaintiff Vivature, Inc. is a Texas corporation which may be contacted by and through its attorney, Jose M. Portela, THE BECKHAM GROUP, 3400 Carlisle, Ste. 550, Dallas, Texas 75204.

3.    Defendant Anthony L. Trombetta ("Trombetta") has answered and appeared.

4.      Defendant The Borden-Perlman Insurance Agency, Inc., ("BP") has answered and appeared.

5.      Defendant Kelly Myers ("Myers") is a resident of the State of New Jersey. Sandy Liser at Naman Howell Smith & Lee, PLLC, Fort Worth Club Building, 306 West 7th Street, Suite 405, Fort Worth, Texas 76102-4911 has agreed to accept service.

6.      Defendant Dave Icenhower ("Icenhower") is a resident of the New Jersey. Sandy Liser at Naman Howell Smith & Lee, PLLC, Fort Worth Club Building, 306 West 7th Street, Suite 405, Fort Worth, Texas 76102-4911 has agreed to accept service.

## II.      JURISDICTION & VENUE

7.      This Court has jurisdiction over this matter as the amount of the dispute is within the jurisdictional limits of this Court. This Court has jurisdiction over Trombetta pursuant to section 17.042(2) of the TEXAS CIVIL PRACTICES AND REMEDIES CODE; furthermore, during his employment at Orchestrate, Trombetta purposely availed himself of the laws of the State of Texas by contacting numerous clients and potential clients in Texas and communicating with them in an attempt to obtain their business for Orchestrate and then subsequently work for them. Trombetta attended meetings in Dallas, Texas and knew that he was signing contracts with a company based in Dallas, Texas and obtaining that company's confidential and proprietary information. Trombetta, Myers, and Icenhower have had numerous contacts with Texas, including but not limited to visits, meetings, emails, and phone calls. The State of Texas has a vested interest in business dealings involving its own corporations. This Court has jurisdiction over BP pursuant to section 17.042(2) of the TEXAS CIVIL PRACTICES AND REMEDIES CODE. Furthermore, BP claims to be licensed in all 48 continental states of the United States, which would include the State of Texas. Further, at least in the past, BP maintained an office in Houston. BP made visits to

Orchestrate's Dallas, Texas office, and BP worked directly with Orchestrate for certain of Orchestrate's clients.

8.      Venue is proper in Dallas County, Texas pursuant to §§ 15.002(a)(1), 15.005 of the TEXAS CIVIL PRACTICES AND REMEDIES CODE because all, or a substantial part of, the events or omissions giving rise to the claims occurred in Dallas County, Texas.

**Summary of the Dispute**

9.      When this suit was filed, it was focused on stopping a former employee, Trombetta, from the outright breach of his contracts with Orchestrate including exploiting Orchestrate's confidential information, which Orchestrate has invested substantial resources in developing and protecting, for Trombetta's and his new employer's own gain.

10.     Orchestrate is well-known throughout the collegiate sports medicine industry, and Orchestrate has spent significant money and time developing its reputation and fostering the goodwill it enjoys.

11.     In order to obtain employment with Orchestrate, Trombetta agreed to sign an extensive Confidentiality Agreement under which Trombetta agreed to protect Orchestrate's Confidential Information.  By signing the Confidentiality Agreement, Trombetta agreed, among other things, not to disclose Orchestrate's Confidential Information; not to use Orchestrate's Confidential Information commercially; and not to divulge Orchestrate's Confidential Information to any third parties.  Trombetta also executed a Non-Compete Agreement with Orchestrate ("Non-Compete").

12.     Pursuant to the Non-Compete, Trombetta is prohibited for three years after his termination from Orchestrate from pursuing any of Orchestrate's clients as Trombetta's own potential prospects.  Trombetta was a highly compensated employee of Orchestrate's who had

access to a substantial amount of Orchestrate's Confidential Information from July 2011 until approximately April 2013, when Trombetta voluntarily terminated his employment.  When Trombetta left Orchestrate, Orchestrate reminded Trombetta in writing of his obligations as laid out in the Confidentiality Agreement and the Non-Compete, sent Trombetta copies of these Agreements, and urged Trombetta to provide his new employer with copies as well.

13.     As a result of the testimony obtained from BP's corporate representative on March 19, 2015 ("the Deposition"), Orchestrate has now learned that not only did Trombetta provide copies of those agreements to BP, but that BP consulted with an attorney, Phil Griffin, about them. BP admitted that their attorney stated that "Trombetta could be employed as long he did not solicit former insurance clients of Orchestrate."

14.     However, less than a month later, as a result of checking Trombetta's Orchestrate e-mail address, Orchestrate discovered that Trombetta and BP were using Orchestrate's Confidential Information, which Trombetta obtained during his employment with Orchestrate and that Defendant's were openly violating Trombetta's contracts with Orchestrate and intentionally pursuing Orchestrate's clients.  Trombetta and BP should have known harm to Orchestrate would result from their actions.

15.     As discovery has progressed, this suit has evolved.  In the Deposition, BP confirmed that it had a verbal agreement with Orchestrate on certain matters which specifically related to providing insurance services to the schools which are the subject matter of the lawsuit. As a result of facts learned during discovery it has been determined that Trombetta and BP were colluding against Orchestrate, even while Trombetta was still employed by Orchestrate.  Further, BP breached its contract with Orchestrate and has been attempting to steal Orchestrate's clients and even gone so far as to allowing third parties to cause Orchestrate's clients to breach their

contracts with Orchestrate. Further, as a result of testimony from the Deposition, it appears that BP has breached its verbal contract with Orchestrate by not paying Orchestrate amounts owed from BP earning brokerage commissions from certain clients.

16.     While discovery is far from over, the facts to date show that this scheme between Trombetta and BP was much more sinister than first anticipated and that the resulting damages will be in the millions.

<u>Summary of Injunctive Relief Requested</u>

17.     Orchestrate is requesting that the court enjoin Defendants from the following: (1) using or disclosing Orchestrate's Confidential Information; (2) contacting existing or prospective clients of Orchestrate; (3) defaming Orchestrate; (4) tortiously interfering with Orchestrate's contracts; (5) tortiously interfering with Orchestrate's prospective business relations; (6) failing to return Orchestrate's Confidential Information and property which Trombetta had in his possession or control as of the date of his termination from Orchestrate; (7) continuing to breach the Confidentiality and Non-Compete Agreements; and (8) destroying any evidence.

18.     If Defendants are not enjoined from the above actions, Orchestrate will be immediately and irreparably harmed. By Defendants' use of Orchestrate's Confidential Information for their own commercial purposes, Defendants are destroying Orchestrate's reputation, goodwill, and customer confidence. Further, the financial impact on Orchestrate due to the loss of business relationships and sales simply cannot be measured with any degree of certainty. It is impossible or inadequate to measure Orchestrate's damages from Defendants' use and disclosure of Orchestrate's confidential information or Trombetta's breaches of the Non-Compete Agreement. All of this constitutes irreparable harm to Orchestrate.

19.    Orchestrate hereby incorporates all affidavits and attachments to those affidavits attached to its Original Petition, Request for Temporary Restraining Order and Request for Temporary Injunction. Currently, an Agreed Temporary Injunction is in effect. It is believed that Defendants have violated that Temporary Injunction.

### III.    FACTS

**Orchestrate's business**

20.    Orchestrate is a Texas corporation based in Dallas, Texas. See Affidavit of Mouzon Bass, III, Exhibit 1, at ¶4. Orchestrate has spent significant money and time developing its reputation in the sports medicine industry. *Id.* Not only has Orchestrate become a cutting-edge company assisting colleges throughout the United States with insurance-related products for their athletes, but Orchestrate has developed highly unique and proprietary products, services, and marketing concepts which have directly led to Orchestrate's singular success and the goodwill Orchestrate enjoys in the sports medicine industry. *Id.*

21.    The success of Orchestrate's business is largely a result of Orchestrate's research and development, marketing plans, pricing models, and other proprietary marketing and financial information, which Orchestrate has created through its own hard work over several years, at a cost exceeding hundreds of thousands of dollars. *Id.*

22.    Orchestrate has been able to provide its products and services competitively by careful pricing, market analysis, and gathering and analyzing data about its customers. *Id.* This information is highly unique and confidential. *Id.* Orchestrate cannot put a price on the relationships it has developed with its customers and the far-reaching effects of Defendants' exploiting for their own benefit information about the very processes that have given Orchestrate a competitive advantage in the marketplace over last several years. *Id.*

**Trombetta was a highly-compensated employee who got greedy**

23.     Trombetta became an employee of Orchestrate's on or about July 13, 2011. *Id.* at ¶5 and Ex. A to Ex. 1 at p. 2. In exchange for a lucrative compensation and training package and the right to access Orchestrate's Confidential Information, Trombetta agreed that, for three years after Trombetta's voluntary or involuntary termination, Trombetta was prohibited from pursuing any client of Orchestrate's as a potential prospect of Trombetta's or his future employer's, directly or indirectly. Ex. 1 at ¶5 and Ex. A to Ex. 1 at ¶4. Trombetta is specifically prohibited during this three-year period from directly or indirectly attempting to change any agreement between a client of Orchestrate's and any insurer. Ex. 1 at ¶5 and Ex. A to Ex. 1 at ¶4. Trombetta also agreed that all files, notes, electronic memoranda, or other information about any of Orchestrate's clients remained the sole property of Orchestrate and could not be removed or copied for any purpose unrelated to Trombetta's employment with Orchestrate without Orchestrate's express, written, consent. Ex. 1 at ¶5 and Ex. A to Ex. 1 at ¶6. Orchestrate never gave Trombetta permission to use any of its clients' information for any purpose other than Trombetta's securing clients for Orchestrate during his employment. Ex. 1 at ¶5.

24.     Also on or about June 13, 2011, Trombetta executed a Confidentiality Agreement, which provided that Trombetta (1) would hold all Confidential Information received from Orchestrate in strict confidence and would not disclose or divulge either directly or indirectly any Confidential Information to any third party unless first authorized to do so in writing by Orchestrate; (2) would not reproduce any Confidential Information nor use any Confidential Information commercially or for any purpose other than the performance of Trombetta's duties for Orchestrate; and (3) upon his termination, immediately deliver to Orchestrate all Confidential Information in his possession or control, along with all of Orchestrate's property in his possession

or control, including any files, notes, electronic memoranda, client information, drawings, equipment, and materials received from Orchestrate or originating from his activities for Orchestrate. Ex. 1 at ¶6 and Ex. B to Ex. 1 at ¶2.

25.     Orchestrate never gave Trombetta permission to disclose any Confidential Information to any third parties, specifically not to Defendant BP. Ex. 1 at ¶6.

26.     "Confidential Information" is defined as any information of any kind, nature, or description concerning any matters affecting or relating to Trombetta's services for Orchestrate, the business or operations of Orchestrate, and/or the products, plans, pricing models, customer lists, marketing plans, processes, or other data of Orchestrate. Ex. 1 at ¶7 and Ex. B to Ex. 1 at ¶2. Confidential Information may also include information covered under the privacy and security rules provisions of the  Health Insurance Portability and Accountability Act of 1996 (HIPAA). Ex. B to Ex. 1 at ¶2.

27.     On or about April 8, 2013, Trombetta informed Orchestrate that he was resigning from Orchestrate but that he planned to continue to sell insurance to college athletic departments. Ex. 1 at ¶8 and Ex. C to Ex. 1.  Orchestrate responded to Trombetta's abrupt resignation and assertion that Trombetta would continue to work in the same market as Orchestrate by reminding Trombetta of his continuing obligations to Orchestrate regarding Orchestrate's Confidential Information and Trombetta's Non-Compete Agreement.   Ex. 1 at ¶8 and Ex. D to Ex. 1. Orchestrate attached copies of Trombetta's Non-Compete Agreement and Confidentiality Agreement and requested that Trombetta provide copies of those agreements to his new employer. Ex. 1 at ¶8 and Ex. D to Ex. 1.

28.     Shortly thereafter, Orchestrate learned that Trombetta was working for Defendant BP, an agency that provides insurance products to the same target market as Orchestrate as a result of checking Trombetta's Orchestrate email inbox. Ex. 1 at ¶8.

**Trombetta goes to work for a competitor, BP, and Trombetta and BP use Orchestrate's Confidential Information to steal Orchestrate's clients**

29.     Even though less than two months have passed since Trombetta resigned from Orchestrate, evidence shows that he is already fragrantly violating the Confidentiality and Non-Compete Agreements. *Id.* at ¶9. These violations appear to be intentional and targeted at Orchestrate's clients with whom Trombetta had contact while he worked for Orchestrate. *Id.*

30.     On or about May 7, 2013, Orchestrate discovered that Trombetta and BP were pursuing Orchestrate's client Glenville State University as a potential client of BP's. *Id.* and Ex. E to Ex. 1, e-mail exchange between Beth Andrews and Trombetta re: Glenville State. Trombetta had worked with Glenville State University while he was employed with Orchestrate. Ex. 1 at ¶9 and Exs. F-H to Ex. 1, e-mail exchanges between Trombetta and Brent Walters re: Glenville State.

31.     Also on or about May 15, 2013, Orchestrate discovered that Trombetta and BP were preparing to pursue another client of Orchestrate's, Eastern Kentucky University, as a potential client of BP's. Ex. 1 at ¶9 and Ex. I to Ex. 1, e-mail exchange between Trombetta and David Green re: Eastern Kentucky University. Trombetta had also worked with Eastern Kentucky University while he was employed with Orchestrate, and Orchestrate reasonably believes that Trombetta intends to pursue Eastern Kentucky University as a client of BP's. Ex. 1 at ¶9 and Exs. J-L.

**Trombetta breaches the Confidentiality Agreement**

32.     As stated above, under the Confidentiality Agreement, among other things, Trombetta agreed to (1) hold all Confidential Information in strict confidence and not disclose any

Confidential Information to any third party; (2) not reproduce any Confidential Information or use any Confidential Information commercially for any purpose; and (3) upon his termination, immediately deliver to Orchestrate all Confidential Information in his possession or control.  Ex. B to Ex. 1 at ¶2.

33.    In the course and scope of his employment with BP, the evidence demonstrates that Trombetta disclosed Confidential Information of Orchestrate's regarding Orchestrate's clients and Trombetta's services for Orchestrate, specifically relating to Glenville State University and Eastern Kentucky University.  Ex. 1 at ¶10.   Furthermore, Trombetta is using Orchestrate's Confidential Information for a commercial purpose in connection with his employment with BP, in flagrant disregard of the Confidentiality Agreement.  *Id.*  Additionally, the fact that Trombetta has the ability to pursue Orchestrate's client base as prospective clients of BP's demonstrates that Trombetta has retained Confidential Information in violation of the Confidentiality Agreement and that Defendants are currently making use of Orchestrate's Confidential Information in a manner extremely adverse to Orchestrate.  *Id.*  If Defendants are allowed to continue this illicit campaign, not only will Orchestrate suffer harm in the form of financial damages from the loss of its highly-valued Confidential Information, but information protected by HIPAA may be disclosed, which would subject Orchestrate to liability and subject countless other individuals to having their personal medical records revealed.  *Id.*

**Trombetta, with BP's knowledge and consent, breaches the Non-Compete Agreement**

34.    As stated above, under the Non-Compete Agreement, Trombetta agreed that, for three years after Trombetta's termination, Trombetta was prohibited from pursuing any client of Orchestrate as a potential client of Trombetta's or his future employer's, directly or indirectly.  Ex. 1 at ¶11; Ex. A to Ex. 1 at ¶4.  Trombetta is specifically prohibited during this three-year period

PLAINTIFFS' THIRD AMENDED COMPLAINT                                                    PAGE 10

from directly or indirectly attempting to change any agreement between a client of Orchestrate's and any insurer. Ex. 1 at ¶11; Ex. A to Ex. 1 at ¶4.

35.     Trombetta voluntarily terminated his employment with Orchestrate on April 8, 2013. See Ex. C to Ex. 1. Accordingly, Trombetta is prohibited from pursuing Orchestrate's clients for three years from that date, or until April 8, 2016. Ex. 1 at ¶11.

36.     The evidence demonstrates that almost immediately upon his resignation, Trombetta began pursuing Orchestrate's clients in attempt to obtain their business for BP. *Id.* Specifically, Trombetta began pursuing Glenville State University and Eastern Kentucky University on BP's behalf, both clients of Orchestrate for whom Trombetta had done significant work while he was employed by Orchestrate, within a month of his resignation. *Id.* and Exs. E-L to Ex. 1.

37.     Further, Trombetta confirmed in his deposition that he had contacted a laundry list of clients which were former clients of Orchestrate for the purpose of obtaining business from them for BP. This is specifically the type of activity that BP's own lawyers told BP that would subject BP to liability to Orchestrate as was admitted at the Deposition.

**BP and Trombetta defame Orchestrate to its most important clients, attacking Orchestrate's integrity and credibility**

38.     Orchestrate has learned that, BP and Trombetta have engaged in a concerted effort to defame Orchestrate to its client base, targeting Orchestrate's most important clients. Ex. 1 at ¶12.

39.     Specifically, multiple BP employees, and, upon information and belief, Trombetta, have communicated a variety of false and misleading statements to numerous universities Orchestrate services, including Texas Christian University, when BP and Trombetta should have known that those statements were false. *Id.*

40.     These false and misleading statements include the following: (1) Orchestrate is not timely processing insurance claims; (2) Orchestrate is not providing the discounts it is promising; (3) Orchestrate is using incorrect insurance forms; and (4) insurers are not "allowed" to use Orchestrate. *Id.*

41.     Certain of Orchestrate's clients have reported these statements to Orchestrate and expressed uncertainty about renewing their contracts with Orchestrate. *Id.* Orchestrate has been forced to expend significant time and effort addressing these false and misleading statements in an effort to assuage their clients' concerns, and Orchestrate's efforts may ultimately be in vain. *Id.*

42.     Orchestrate does not yet know the full extent of Defendants' planned campaign to defame Orchestrate; however, based on the response of Orchestrate's clients who have expressed their concerns to Orchestrate regarding their accusations, the impact on Orchestrate's business as a result of Defendants' false statements will be far-reaching and substantial. *Id.*

43.     Defendants' defamatory accusations of Orchestrate to its client base have the immediate effect of destroying Orchestrate's reputation, goodwill, and customer confidence, as Orchestrate's business relationships may be permanently damaged. *Id.* at ¶13. Furthermore, Defendants' actions will have devastating financial effects on Orchestrate in the form of hundreds of thousands of dollars in lost sales. *Id.*

IV.     <u>FACTS UNCOVERED IN DISCOVERY</u>

44.     As a result of the Court ordered depositions and document productions, Orchestrate has been able to establish the following:

  a)     Trombetta kept some of Orchestrates confidential information;

  b)     As soon as Trombetta decided he was leaving Orchestrate, Trombetta sent some of Orchestrate's confidential information to his own private email;

  c)     Trombetta helped BP secretly obtain access to confidential and highly sensitive information that Orchestrate possessed;

    d)     In order to cover his tracks, Trombetta deleted months' worth of emails from his Orchestrate email address;

    e)     Trombetta used false pretenses to justify his departure from Orchestrate;

    f)     While still employed by Orchestrate, Trombetta was assisting BP in competing with Orchestrate;

    g)     In furtherance of its own business purposes, BP used Orchestrate's confidential information to Orchestrate's detriment and without Orchestrate's permission;

    h)     While BP had promised to not try to steal Orchestrate's clients, in order to induce Orchestrate into a contract and business relationship, BP violated that promise;

    i)     BP employees, operating in the course and scope of their employment, have colluded with Trombetta in Trombetta's breach of his contracts with Orchestrate;

    j)     BP employees have taken action, or failed to take action when they should have, knowing that their action/inaction would lead to certain colleges breaching their contracts with Orchestrate;

    k)     BP has violated its oral contract with Orchestrate.

    l)     Myers lied at his first deposition when he denied that BP had made any negative comments about Orchestrate to Orchestrate's clients.

    m)    At his second deposition, Myers was forced to admit that he and Icenhower had defamed Orchestrate to at least 5 of Orchestrate's clients.

    n)    Affidavits from 2 other former Orchestrate clients show that Myers is still trying to cover up many of the defamatory statements he made to other former Orchestrate clients.

    o)    Before this suit was even filed, BP was in possession of Trombetta's contracts with Orchestrate and hired a law firm to tell them what work Trombetta could do for them. Even after being told what Trombetta could not do, BP encouraged and allowed Trombetta to violate his contracts with Orchestrate.

Given that only limited discovery has been done to date, it is clear that this is just the proverbial "tip of the iceberg" when it comes to uncovering the untoward campaign of deceit that both Trombetta and BP have pursued.

---

45.    At the first deposition, BP's corporate representative (Myers) denied that any negative comments had been made by BP about Orchestrate. This was an outright lie. Prior to the mediation conducted in December of last year, Orchestrate secured 2 affidavits from 2 different individuals at 2 different schools which confirmed that both Myers and Icenhower had made multiple disparaging statements about Orchestrate. Exhibits 2 and 3. As can be seen from these exhibits, not only were BP, Myers, and Icenhower defaming Orchestrate, but that defamation directly resulted in Orchestrate losing the business with both of those schools.

46.    Even more telling is the testimony obtained at the Deposition on this subject matter. Myers, sitting on behalf of BP, has now admitted that both he and Icenhower said "bad things" to at least 5 other clients of Orchestrate. Truth be told, Orchestrate believes that the evidence will show that BP, Myers, Trombetta, and/or Icenhower defamed Orchestrate to a multitude of other schools and are still hiding their improper acts.

## V.    CAUSES OF ACTION

### A.    BREACH OF THE CONFIDENTIALITY AGREEMENT-TROMBETTA

47.    Orchestrate incorporates by reference all foregoing paragraphs as if fully set forth herein.

48.    Orchestrate and Trombetta are parties to a valid and enforceable contract—the Confidentiality Agreement.

49.    Orchestrate fully performed, tendered performance, or was excused from performing all of its obligations under the Confidentiality Agreement, and all conditions precedent to Orchestrate's recovery have been performed.

50.    As set forth in detail above, Trombetta has materially breached the Confidentiality Agreement by, among other things, (1) not holding all Confidential Information in strict confidence when he should have known harm to Orchestrate would result; (2) disclosing and

divulging Confidential Information to a third party when he should have known harm to Orchestrate would result; (3) reproducing Confidential Information when he should have known harm to Orchestrate would result; (4) using any Confidential Information commercially for a purpose for other than the performance of Trombetta's duties for Orchestrate when he should have known harm to Orchestrate would result; and (5) not immediately delivering to Orchestrate all Confidential Information and property of Orchestrate in his possession or control upon his termination from Orchestrate when he should have known harm to Orchestrate would result.

51.     Trombetta's breaches of the Confidentiality Agreement have caused Orchestrate to suffer injury.

**B.     BREACH OF THE NON-COMPETE AGREEMENT-TROMBETTA**

52.     Orchestrate incorporates by reference all foregoing paragraphs as if fully set forth herein.

53.     Orchestrate and Trombetta are parties to a valid and enforceable contract—the Non-Compete Agreement.

54.     Orchestrate fully performed, tendered performance, or was excused from performing all of its obligations under the Non-Compete Agreement, and all conditions precedent to Orchestrate's recovery have been performed.

55.     As set forth in detail above, Trombetta has materially breached the Non-Compete Agreement by, among other things, (1) pursuing a client of Orchestrate as a potential client of Trombetta's or his future employer's, directly or indirectly, or considering a client of Orchestrate as a potential prospect of Trombetta's or his future employer's, when he should have known harm to Orchestrate would result; and (2) directly or indirectly attempting to change any agreement

between a client of Orchestrate's and any insurer, when he should have known harm to Orchestrate would result.

56. Trombetta's breaches of the Non-Compete Agreement have caused Orchestrate to suffer injury.

C. **TORTIOUS INTERFERENCE WITH CONTRACT-TROMBETTA, BP, ICENHOWER AND MYERS**

57. Orchestrate incorporates by reference all foregoing paragraphs as if fully set forth herein.

58. Orchestrate has existing contracts with various colleges throughout the United Trombetta, BP, and Myers willfully and intentionally interfered with these contracts when they should have known of these contracts' existence. Those actions include, but are not limited to, exploiting Orchestrate's Confidential and proprietary information to pursue these contracts as prospective business of BP in the course of BP's business. Further, Trombetta, BP, Icenhower and Myers have engaged in a campaign designed to cause those colleges to breach their contracts with Orchestrate by not sending certain medical insurance claims to Orchestrate. BP's and Trombetta's actions proximately caused damages to Orchestrate by making the performance of its contracts with its clients more burdensome or difficult or impossible.

D. **TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS-TROMBETTA, BP, ICENHOWER AND MYERS**

59. Orchestrate incorporates by reference all foregoing paragraphs as if fully set forth herein.

60. There was a reasonable probability that Orchestrate and certain colleges would have entered into business relationships but for Trombetta's, BP's, Icenhower's, and Myers' malicious intervention by way of exploiting Orchestrate's Confidential and proprietary information to pursue

these contracts as prospective business of BP in the course of BP's business. Trombetta, BP, Icenhower, and Myers acted with a conscious desire to prevent Orchestrate's contractual relationships from occurring or with knowledge that the interference was certain or substantially likely to occur as a result of their conduct, and there was no privilege or justification for their actions. Orchestrate has suffered actual harm or damages as a result of Defendants' interference.

E.      DEFAMATION- BP, MYERS, ICENHOWER, AND TROMBETTA

61.      Orchestrate incorporates by reference all foregoing paragraphs as if fully set forth herein.

62.      Defendants made false and misleading statements to clients in whom Orchestrate had a joint business interest with Defendants when Defendants should have known that those statements were false and misleading. Specifically, these statements were made in the course of BP's business and included the statements contained in Exhibits 2 and 3. Further, BP has admitted at the Deposition that Myers and Icenhower said bad things to at least 5 more schools which were clients of Orchestrate.

63.      The statements above were made by Defendants in the course of their business at BP, while Defendants were performing insurance services, and they were made to clients in whom BP and Orchestrate had joint business interests. Furthermore, Defendants should have known that these statements were false and misleading, and a reasonable party would have recognized that their actions would have created an unreasonable risk that a defamatory statement would have been communicated to a third party. Orchestrate has been damaged as a result.

F.      NEGLIGENCE-BP, MYERS, ICENHOWER AND TROMBETTA

64.      Orchestrate incorporates by reference all foregoing paragraphs as if fully set forth herein.

65.     BP, Myers, Icenhower, and Trombetta owed Orchestrate a duty of care with respect to their use of Orchestrate's Confidential and proprietary information.  When Defendants, while performing duties related to the conduct of BP's business, disclosed Orchestrate's Confidential and proprietary information to third parties for their own benefit, Defendants breached their duty of care.  These breaches were conducted by BP employees who were operating well within the course and scope of their employment.  These breaches were the proximate cause of damages to Orchestrate.

G.     BREACH OF CONTRACT- BP

66.     Orchestrate incorporates by reference all foregoing paragraphs as if fully set forth herein.

67.     BP has confirmed that it entered into an agreement with Orchestrate that BP would not steal Orchestrate's clients or use Orchestrate's confidential information to Orchestrate's detriment.  This was a material term to the agreement between Orchestrate and BP.  As a result of this contract, Orchestrate not only shared certain clients for certain products with BP but also Orchestrate gave BP certain confidential information, when he should have known harm to Orchestrate would result.  As a result of this breach, Orchestrate has been damaged.

68.     At the Deposition, BP confirmed that as a result of the oral agreement it had with Orchestrate that BP was supposed to pay a percentage of certain commissions to Orchestrate. BP has failed to do so and therefore has breached its oral agreement with Orchestrate.  As a result of this breach, Orchestrate has been damaged.

H.     UNFAIR COMPETITION- BP

69.     Orchestrate incorporates by reference all foregoing paragraphs as if fully set forth herein.

70.    Orchestrate has spent significant time, labor, skill, and money in creating and gathering certain confidential information. BP's use of that confidential information in the course of BP's business gives BP a special advantage in that BP was burdened with little or none of the expense incurred by Orchestrate in relation to this confidential information.  BP should have known that harm to Orchestrate would result from its actions.  As a result, BP's actions have caused commercial damage to Orchestrate.

**I.    FRAUD - BP AND MYERS**

71.    Orchestrate incorporates by reference all foregoing paragraphs as if fully set forth herein.

72.    As described above, BP and Myers have made misrepresentations to Orchestrate, specifically but not limited to representing to Orchestrate that its confidential information would not be used against Orchestrate and that BP would not attempt to steal Orchestrate's clients.  Those misrepresentations were made at a time when BP and Myers knew they were false.   Those misrepresentations were relied upon by Orchestrate to Orchestrate's detriment.  As a result of relying upon these misrepresentations, Orchestrate has been damaged.

**J.    NEGLIGENT MISREPRESENTATION - BP AND MYERS**

73.    Orchestrate incorporates by reference all foregoing paragraphs as if fully set forth herein.

74.    As an alternative pleading, Orchestrate asserts that BP and Myers made representations as described above in the course of BP's business and in a transaction where BP had a pecuniary interest.  BP and Myers supplied this false information to Orchestrate intending for Orchestrate to use it as part of their business in entering into an agreement with BP.  BP and Myers did not exercise reasonable care or competence in communicating the information.

Orchestrate relied on the information and assurances made by BP.  As a result of that justifiable reliance, Orchestrate has suffered pecuniary loss.

K.    UNJUST ENRICHMENT- BP

75.    Orchestrate incorporates by reference all foregoing paragraphs as if fully set forth herein.

76.    As an alternative pleading, Orchestrate believes that BP has obtained a benefit from their illicit actions towards Orchestrate in the course of BP's business.  BP is not entitled to retain this benefit which resulted from its own improper actions.

L.    BREACH OF FIDUCIARY DUTY- TROMBETTA

77.    Orchestrate incorporates by reference all foregoing paragraphs as if fully set forth herein.

78.    As an employee of Orchestrate, Trombetta owed Orchestrate a fiduciary duty.  As described above, Trombetta has violated that fiduciary duty in the course of performing duties related to the conduct of BP's business, when he should have known harm to Orchestrate would result. As a result of Trombetta's actions, Orchestrate has suffered damage.

M.    AIDING AND ABETTING BREACH OF FIDUCIARY DUTY (CONSPIRACY) – BP, ICENHOWER, AND MYERS

79.    Orchestrate incorporates by reference all foregoing paragraphs as if fully set forth herein.

80.    BP, Icenhower and Myers have been aware of the employee relationship between Orchestrate and Trombetta for at least over 2 years. As described above, Trombetta has breached his fiduciary duty to Orchestrate.  It is apparent from the discovery in this case that BP, Icenhower and Myers should have known about Trombetta's fiduciary duty and his actions and in fact participated and supported Trombetta in some of those actions in the course of their business.  As

a result of Defendants assisting Trombetta in breaching his fiduciary duty, Orchestrate has been damaged.

**VI.   APPLICATION FOR TEMPORARY RESTRAINING ORDER AND REQUEST FOR HEARING ON TEMPORARY INJUNCTION**

81.     The purpose of a temporary restraining order is to preserve the *status quo* — the last *peaceable, non-contested status* that preceded the controversy.  The issuance of the restraining order will preserve the status quo in this matter.  Plaintiffs will suffer immediate irreparable injury if Defendants are allowed to continue to freely use and distribute Orchestrate's Confidential Information or republish the false statements they have already made to any additional third parties.

82.     Given that these acts appear to be currently ongoing, there is an imminent threat of irreparable injury.

83.     Plaintiffs have demonstrated through its pleadings and evidence attached thereto that it will likely succeed on the merits of the case and that it will suffer immediate and irreparable injury if Defendants are not immediately enjoined from continuing their wrongful acts.  Plaintiffs respectfully request the Court to enter an Order immediately restraining Defendants, and all persons acting in participation with Defendants, to be commanded to immediately desist and restrain from:

       1)     Using or disclosing Orchestrate's Confidential Information

       2)     Contacting existing or prospective clients of Orchestrate;

       3)     Defaming Orchestrate;

       4)     Tortiously interfering with Orchestrate's contracts;

       5)     Tortiously interfering with Orchestrate's prospective business relations;

6)   Failing to return Orchestrate's Confidential Information and property which Trombetta had in his possession or control as of the date of his termination from Orchestrate;

7)   Continuing to breach the Confidentiality and Non-Compete Agreements; and

8)   Destroying any evidence which might support any of the claims in this case or be likely to lead to the discovery of admissible evidence in this case.

## VII.   REQUEST FOR ATTORNEYS FEES

84.   Pursuant to the CIVIL PRACTICES & REMEDIES CODE §38.001, Plaintiffs request their costs and attorney fees associated with this action. Plaintiffs have been required to retain the law firm of THE BECKHAM GROUP in order to prosecute their claims. THE BECKHAM GROUP has agreed to charge reasonable and necessary fees in order to pursue Plaintiffs' claims.

## VIII.   PUNITIVE DAMAGES

85.   Defendants' wrongful actions in connection with their breach of fiduciary duty were committed knowingly, willfully, with actual knowledge, or with actual malice. Accordingly, Orchestrate is entitled to an award of exemplary damages as provided by Chapter 41 of the Texas Civil Practice and Remedies Code.

## IX.   PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs Orchestrate HR, Inc. and Vivature, Inc. respectfully request that Defendants be cited to appear and answer herein, and that upon a final hearing, by a Jury, of the cause, judgment be entered for Plaintiffs against Defendants as follows:

(a)   Any damages suffered by Plaintiffs, specifically but not limited to punitive damages;

(b)   All Pre-Judgment and Post-Judgment Interest as allowed by law and contract;

(c)   Costs of Court and Attorneys' Fees;

     (d)     A Temporary Restraining Order and Temporary Injunction restraining Defendants from the actions described above; and

     (e)     Such other and further relief, at law or in equity, to which Plaintiffs may show themselves to be justly entitled.

DATED:  June 2, 2015.

Respectfully submitted,

/s/ Jose M. Portela

Blake L. Beckham
blake@beckham-group.com
Texas State Bar No. 02016500
Jose M. Portela
jose@beckham-group.com
Texas State Bar No. 90001241
Sarita A. Smithee
Sarita@beckham-group.com
Texas State Bar No. 24025254
THE BECKHAM GROUP, P.C.
3400 Carlisle, Suite 550
Dallas, Texas 75204
214-965-9300 (tel.)
214- 965-9301 (fax)

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing document has been delivered to the following parties, pursuant to Fed. R. Civ. P. 5(b)(2)(E), by and through the ECF system on this 2nd day of June, 2015.

/s/ Jose M. Portela

Jose M. Portela

Sandra Liser
Grant Liser
Naman Howell Smith & Lee, PLLC
Fort Worth Club Building
306 West 7th Street, Suite 405
Fort Worth, Texas 76102-4911

*Via: sliser@namanhowell.com &*
*gliser@namanhowell.com*

James M. Stanton
Stanton Law Firm PC
4350 Beltway Drive
Addison, Texas 75001

*Via: stanton@staontrialfirm.com*

I:\EDB\BP\Pleadings 3 13-cv-02110\third amended complaint 060115.docx