UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| REPUBLIC FRANKLIN INSURANCE CO., <br><br> Plaintiff, <br><br> v. <br><br> TRAVELERS CASUALTY INSURANCE CO. OF AMERICA. <br><br> Defendant. | Civ. No. 2:17-cv-4593 (WJM) <br><br> OPINION |

**WILLIAM J. MARTINI, U.S.D.J.**

In this action, an insurer, Republic Franklin Insurance Company ("Republic"), seeks reimbursement from another insurer, Travelers Casualty Insurance Company of America ("Travelers"), for defense costs incurred and the settlement reached in an underlying business dispute involving their mutual insured. This matter is presently before the Court on Republic's and Travelers' competing motions for summary judgment. ECF Nos. 80, 81. Having reviewed the parties' submissions, the Court decides the motions without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Republic's motion is **DENIED** and Travelers' motion is **GRANTED**.

I.  FACTUAL BACKGROUND

The material facts of this matter are largely undisputed. Republic and Travelers both insured The Borden-Perlman Insurance Agency, Inc. ("B-P"), a New Jersey insurance brokerage company.[1] Defendant's Statement of Material Facts ("Def. SMF") ¶ 1. Republic insured B-P under a professional liability policy—specifically, an Insurance Agents and Brokers Errors and Omissions Liability Policy, Policy No. 3735507 EO (the "E&O Policy")—while Travelers insured B-P under a commercial general liability policy, Policy No. 680-6C420563-13-42 (the "CGL Policy"). *Id.* ¶ 2. Both policies were effective from January 1, 2013 to January 1, 2014. Plaintiff's Statement of Material Facts ("Pl. SMF") ¶¶ 20, 30. During the policy period, on May 31, 2013, B-P became involved in litigation in Texas for which B-P asserted its right to a defense under both insurance policies (the "underlying Texas lawsuit").

---

[1] The parties refer to Republic, a member of the Utica National Insurance Group, as both "Republic" and "Utica" throughout the record. *See* Def. SMF ¶ 1. For purposes of clarity, the Court simply refers to the insurer as "Republic."

### A. The Texas Lawsuit

In the underlying Texas lawsuit, a company known as Orchestrate, H.R. ("Orchestrate") sued B-P after B-P hired Orchestrate's former employee, Anthony Trombetta ("Trombetta"), as an insurance salesman. Def. SMF ¶¶ 3-4. Orchestrate provides insurance products to the same target market as B-P. *Id.* ¶ 4. Orchestrate filed a lawsuit in Texas against both B-P and Trombetta, alleging that they were using Orchestrate's confidential information and pursuing Orchestrate's clients, in part by defaming Orchestrate to its clients in order to gain their business. *Id.* ¶¶ 4-5. Orchestrate's initial complaint asserted causes of action against Trombetta for breach of his confidentiality agreement and non-compete agreement, as well as claims against Trombetta and B-P for tortious interference and defamation. *Id.* ¶ 8. Orchestrate specifically alleged that B-P and Trombetta "had communicated a variety of false and misleading statements" to a number of Orchestrate's clients, such as: "(1) Orchestrate is not timely processing insurance claims; (2) Orchestrate is not providing the discounts it is promising; (3) Orchestrate is using incorrect insurance forms; and (4) insurers are not 'allowed' to use Orchestrate." Pl. SMF ¶¶ 12-13. Certain of Orchestrate's clients allegedly reported these statements to Orchestrate and expressed uncertainty about renewing their contracts. Pl. SMF ¶ 14. Orchestrate later amended its complaint to add, among other allegations, that the defamatory statements were made in the course of B-P's business and made to clients in whom B-P and Orchestrate had joint business interests. Def. SMF ¶ 11; Def. Ex. C at ¶ 58, ECF No. 80-6.

### B. The Insurance Policies

B-P asserted its right to a defense under both Travelers' CGL Policy and Republic's E&O Policy. Travelers' CGL Policy covered, among other events and injuries, "personal and advertising injury" and provided a "duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury.'" Pl. SMF ¶ 21. An endorsement to the CGL Policy defined "personal injury" to mean injury caused by:

> Oral or written publication . . . of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organizations that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged.

Def. SMF ¶ 26. The CGL Policy contained a Financial Professional Services Exclusion which specified that the Policy did not apply to "'[p]ersonal injury' arising out of providing or failing to provide 'financial professional services' by any insured to others." *Id.* ¶ 27. "Financial professional services" included assuming or discharging any obligation; advising, inspecting, reporting or making any recommendation; effecting coverage; or handling any claim "[w]ith respect to any contract or treaty of insurance." *Id.*

2

On June 24, 2013, Travelers issued B-P a coverage disclaimer, finding that to the extent Orchestrate sued B-P for a "personal injury" offense, the Financial Professional Services Exclusion applied to preclude coverage. *Id.* ¶ 29. Travelers explained:

> The defamation claim arises out of comments that BP and Trombetta allegedly made to clients, claiming that Orchestrate is not properly or timely processing claims, that it is not providing discounts as promised, and that insurers are not "allowed" to use Orchestrate. All of those claims arise out of BP's business activities of "affecting (insurance) coverage," which presumably includes "advising, inspecting, reporting, or making any recommendation" with regard to insurance policies.

*Id.*

In comparison, Republic's E&O Policy provided coverage for losses and claims arising out of "'wrongful acts' committed in the conduct of the insured's business . . . in rendering or failing to render professional services as: [an insurance agent, broker, or consultant]." Def. Ex. H at BP-000020, ECF No. 80-11. "Wrongful act" included "any negligent act, error, or negligent omission," but excluded "deliberate" or "knowing" conduct. *Id.* at BP-000019, BP-000021. "Professional services" included, among other activities, "[p]roviding insurance program and risk management services and advice." *Id.* at BP-000020.

On August 8, 2013, Republic issued B-P a letter denying coverage. Def. SMF ¶ 31. The letter provided, in relevant part, that the defamation claim was not within the scope of the E&O Policy because "there are no allegations [by Orchestrate] which suggest that the defamation claim was committed in the course of [B-P's] actions in rendering or failing to render professional insurance services." *Id.* ¶ 32.

### C. The New Jersey Declaratory Judgment Action

While B-P did not challenge Travelers' coverage position, it did challenge Republic's coverage position by filing a declaratory judgment action in the New Jersey Superior Court, Law Division, on September 26, 2013 (the "NJ Coverage Action"). Pl. SMF ¶ 32. As the NJ Coverage Action was pending, Orchestrate amended its complaint against B-P in the underlying Texas lawsuit, leading Republic to reconsider its coverage determination. Def. SMF ¶ 38. On February 3, 2014, Republic issued a reservation of rights letter agreeing to defend B-P with respect to the defamation claim. *Id.* In that same letter, Republic also made a formal demand for information about "B-P's general liability carrier," stating:

> Given that plaintiff [Orchestrate] alleges personal injury arising out of false and defamatory statements . . ., arguably, a coverage obligation has been triggered on behalf of the CGL carrier [under the standard ISO CGL policy extending coverage to personal and advertising injury]. If BP elects, or has elected, not to place the CGL carrier on notice, please consider this a formal demand for

3

appropriate identifying information such that [Republic] can pursue this independent of BP.

*Id.* ¶ 40.  Republic learned of Travelers' CGL Policy at some later point in February of 2014, but neither considered the merit of Travelers' coverage position at that time, nor considered the possibility of impleading Travelers into the NJ Coverage Action.  Pl. SMF ¶¶ 41-43.

On August 22, 2014, the Superior Court conducted a hearing on B-P and Republic's cross-motions on choice of law issues and the scope of Republic's duty to defend.  *See generally* Def. Ex. R, ECF No. 80-21.  There, B-P explained the nature of Orchestrate's claims as follows: "So, these were clients that [B-P] was jointly providing services for with Orchestrate and Orchestrate is claiming that we [B-P] made defamatory statements to those clients who we were providing services to . . . ." *Id.* at 11:23-12:2.  Republic countered that "the complaint is clear" that the defamatory statements did not arise in the course of B-P providing professional services to these clients or potential clients, but rather the defamatory statements arose in the course of B-P attempting to steal Orchestrate's clients.  *Id.* at 12:10-12:16.  The Superior Court ultimately agreed with B-P and concluded:

> [T]he defamatory statements that are alleged in [Orchestrate's] complaint clearly could be construed to be ones that arose out of that providing those professional services.  So, you know, under the test here all doubts are resolved against the defendant and if there's a possibility to construe it in favor of the insured that's what the Court's required to do.  So in light of that I'm going to find that there was a duty to defend from the filing of [Orchestrate's] initial complaint.

*Id.* at 12:17-13:2.

The Superior Court then entered judgment in favor of B-P, having decided that Republic had a duty to defend under the E&O Policy and that Texas state law applied to the scope of that duty.  Pl. Ex. 13, ECF No. 81-15.  Republic appealed the decision as the underlying Texas lawsuit continued to proceed.  Def. SMF ¶ 59.  On April 7, 2016, the New Jersey Superior Court, Appellate Division affirmed the judgment in favor of B-P.  *Id.*  The New Jersey Supreme Court denied Republic's subsequent petition for certification.  *Id.*

### D.  Notice to Travelers and the Texas Lawsuit Settlement

On February 1, 2017, five days before trial in the underlying Texas lawsuit, Republic sent correspondence to Travelers stating that it had "reviewed Travelers' June 24, 2013 coverage disclaimer and determined that it was wrongful."  Def. SMF ¶ 68.  Republic asserted for the first time that Travelers should share in B-P's defense costs and any indemnity payment in the Texas lawsuit, which ultimately settled days later on February 6, 2017.  Pl. SMF ¶ 49.

## II. PROCEDURAL HISTORY

Republic filed the present action against Travelers on June 22, 2017, seeking to recoup part of the $5,600,961.64 it allegedly paid on B-P's behalf in the Texas lawsuit. *See generally* Compl.; *see* Pl. SMF ¶ 50. The Complaint asserts claims for breach of contract, equitable contribution, contractual subrogation, equitable subrogation, and unjust enrichment, and requests a declaratory judgment as to Travelers' duty to defend and indemnify B-P under the CGL Policy. Compl. ¶¶ 43-70.

After the pleadings were closed, Republic moved this Court to issue a partial judgment on the pleadings and hold that Defendant owed B-P a duty to defend. ECF No. 8. The Court denied the motion, finding that Travelers raised several questions of law and fact that were "precisely the types of appropriate topics for exploration during discovery." Op. at 3-4, ECF No. 24. Now, with the benefit of a more developed record, Republic and Travelers each move for summary judgment. Republic argues that it is entitled to summary judgment because (1) Travelers wrongly disclaimed coverage, and (2) the entire controversy doctrine is inapplicable and does not bar this suit. *See generally* Pl. Mov. Br., ECF No. 81-1. In contrast, Travelers argues that it is entitled to summary judgment because (1) the CGL Policy excludes coverage; (2) the entire controversy doctrine applies and bars this suit; and (3) equitable doctrines of waiver, estoppel, and laches likewise bar this suit. *See generally* Def. Mov. Br., ECF No. 80-1.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding a motion for summary judgment, the Court construes all facts and inferences in the light most favorable to the non-moving party. *Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).

The moving party bears the initial burden of showing the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact—that is, the "absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). Once the moving party meets this burden, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a *genuine issue for trial* and do more than simply show that there is some metaphysical doubt as to the material facts." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (emphasis in original and internal quotation marks omitted). The non-moving party must present actual evidence that creates a genuine issue for trial—reliance on unsupported assertions, speculation, or conclusory allegations is insufficient to defeat a motion for summary judgment. *Solomon v. Soc'y of Auto. Engineers*, 41 F. App'x 585, 586 (3d Cir. 2002) (citing *Celotex*, 477 U.S. at 324); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (nonmoving party may not successfully oppose summary judgment

motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").

Furthermore, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, (1986). "A fact is 'material' . . . if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson*, 477 U.S. at 248, (1986)). "A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

## IV.   DISCUSSION

The Court need only address the parties' arguments concerning whether Travelers' CGL Policy gave rise to a duty to defend to conclude that Travelers is entitled to summary judgment on all of Republic's claims.

In analyzing whether Travelers is under an obligation to defend B-P against Orchestrate's allegations in the underlying Texas litigation, the Court notes that New Jersey law and Texas law are not in conflict. *See Borden-Perlman Ins. Agency, Inc. v. Utica Mut. Ins. Co.*, No A-1313-14T3, 2016 WL 1368589, at *2-3 (N.J. Super. Ct. App. Div. Apr. 7, 2016). The duty to defend is an insurer's contractual obligation to provide a legal defense in any lawsuit brought against the insured that alleges and seeks damages for an event covered by the insurance policy. *Abouzaid v. Mansard Gardens Assocs. L.L.C.*, 23 A.3d 338, 346 (N.J. 2011); *Bitco Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, 31 F.4th 325, 329 (5th Cir. 2022). In both states, courts determine this duty by reviewing the factual allegations in the underlying complaint with liberality and without regard to their actual merit and comparing them to the language of the insurance policy, the words of which are interpreted in their plain, ordinary meaning. *See Borden-Perlman Ins. Agency, Inc.*, 2016 WL 1368589, at *3. If the allegations in the underlying complaint fall within the scope of the policy's coverage, then the duty to defend arises. *Wimberly Allison Tong & Goo, Inc. v. Travelers Prop. Cas. Co. of Am.*, 559 F. Supp. 2d 504, 510 (D.N.J. 2008), *aff'd*, 352 F. App'x 642 (3d Cir. 2009). If the allegations in the underlying complaint are ambiguous, such that the claims might or might not fall within the scope of coverage, such ambiguities are resolved in favor of coverage. *Id.*; *Bitco Gen. Ins. Corp*, 31 F.4th at 329.

Similar interpretive rules apply with respect to exclusionary clauses within an insurance policy. *See Wimberly Allison Tong & Goo, Inc.*, 559 F. Supp. 2d at 511; *Dragoo v. Allstate Vehicle & Prop. Ins. Co.*, No. 16-984, 2018 WL 1536639, at *2 (N.D. Tex. Jan. 5, 2018). And while "[i]t is axiomatic that the party seeking coverage bears the burden of bringing its claim within the basic terms of the insurance policy[,] . . . [i]t is the insurer that carries the burden of proving that the loss comes within a policy exclusion." *Cadre v.*

*Proassurance Cas. Co.*, No. 16-0103, 2016 WL 3844208, at *4 (D.N.J. July 14, 2016) (citations omitted).

In this case, the parties disagree about whether the defamation allegations in the underlying Texas lawsuit give rise to a claim covered by Travelers' CGL Policy. *See* Pl. Mov. Br. at 13, ECF No. 81-1; Def. Mov. Br. at 33-35, ECF No. 80-1. General liability policies like Travelers' CGL Policy, and professional liability policies like Republic's E&O Policy, "ordinarily cover and are intended to cover different categories of risk." *Search EDP, Inc. v. Am. Home Assur. Co.*, 632 A.2d 286, 288 (N.J. Super. Ct. App. Div. 1993). "[T]he essential purpose of an errors and omissions policy is to cover liability risks unique to and inherent in the practice of a particular profession and which transcend the customary business risks . . . ." *Id.*; *see also Snug Harbor, Ltd. v. Zurich Ins.*, 968 F.2d 538, 543 n.16 (5th Cir. 1992). An insured who has both an errors and omissions policy and a general liability policy presumably has so opted based on a reasonable expectation "that the risk of claims of professional negligence is protected against by the errors and omissions policy and other claims of negligence by the general liability policy. The insured would, therefore, reasonably expect that all business negligence of whatever character would be covered by one policy or the other." *Search EDP, Inc.*, 632 A.2d at 289.

Consistent with this understanding, Travelers' CGL Policy obligated it to defend B-P against any suit seeking damages for defamation *unless* the defamation arose in the course of B-P rendering "professional services." In other words, if Orchestrate's allegations in the underlying Texas lawsuit are that B-P defamed Orchestrate in the course of B-P "[a]dvising, inspecting, reporting, or making any recommendation" with respect to insurance policies, then the CGL Policy's Financial Professional Services Exclusion applies to preclude coverage and Travelers does not owe B-P a duty to defend. Conversely, if Orchestrate's allegations in the underlying Texas lawsuit are that B-P defamed Orchestrate in some context outside of rendering "professional services," then, absent some other exclusion, the allegations fall within the scope of the Policy's coverage and Travelers does owe B-P a duty to defend.

Republic argues that the latter scenario is present here. Republic argues that B-P made the alleged defamatory statements to steal Orchestrate's clients "in the course of business competition," which is "commercial activity designed to gain new business" and therefore distinct from "financial professional services." Pl. Mov. Br. at 13-17, ECF No. 81-1. Travelers argues that the Superior Court rejected this general contention in the NJ Coverage Action; that Republic is collaterally estopped from relitigating the issue; and that the alleged defamatory statements arose out of B-P providing its insurance services to others. Def. Mov. Br. at 33-37, ECF No. 80-1. The Court agrees with Travelers in all respects.

First, the doctrine of collateral estoppel, or issue preclusion, bars Republic from relitigating the fundamental issue of whether B-P's alleged defamatory statements were made in the course of rendering professional services. Issue preclusion "prevents a party from relitigating issues that were adjudicated in a prior lawsuit[,]" *Pasqua v. Cnty. of Hunterdon*, No. 15-3501, 2017 WL 5667999, at *15 (D.N.J. Nov. 27, 2017) (citing *Peloro v. United*

7

*States*, 488 F.3d 163, 174 (3d Cir. 2007)), and "ensures that once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Id.* at *10 (quoting *Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231 (3d Cir. 1995)) (internal quotation marks omitted).  A party seeking to invoke issue preclusion must demonstrate that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.[2]  *Hart v. Wells Fargo Bank, N.A.*, No. 21-14644, 2022 WL 1963666, at *2 (D.N.J. June 6, 2022) (citing *Allen v. V & A Bros., Inc.*, 26 A.3d 430, 445 (N.J. 2011)).

The Court finds that each of the prerequisites for the application of issue preclusion is satisfied here.  The issue presented by Republic's duty to defend claim is in substance the same as that adjudicated in the NJ Coverage Action.  The outcome of both actions turns on whether the complaints in the underlying Texas lawsuit contain allegations that B-P made the defamatory statements in the course of rendering professional insurance services.  Republic would have the Court find that the issues are not identical because its E&O Policy "applies to *any and all* professional services rendered by B-P," whereas Travelers' Policy "narrowly excludes professional services" only "when an insurance broker is specifically acting in connection with the placement of an insurance policy." Pl. Opp. Br. at 15, ECF No. 84.  Such argument is unpersuasive and belied by the actual language of the policies.  Even if Republic's E&O Policy applies so broadly, it expressly provides that "professional services" includes "[p]roviding insurance program and risk management services and advice."  Def. Ex. H at BP-000020, ECF No. 80-11.  Similarly, Travelers' CGL Policy provides that "professional services" includes "advising, inspecting, reporting or making any recommendation . . . [w]ith respect to any contract or treaty of insurance."  Def. SMF ¶ 27.  The Policies may not share a word-for-word definition of "professional services," but the essential meaning of the term, at least with respect to the quoted statements above, is the same.

Furthermore, Republic actually litigated the issue in the NJ Coverage Action, and it is clear that issue was essential to the resolution of the case.  *See* Pl. Ex. R at 10:11-10:20, 12:17-13:2, ECF No. 80-21; c*ompare* Pl. Ex. T at 19-20, ECF No. 80-23 *with* Pl. Mov. Br. at 13-14, ECF No. 81-1.  The Superior Court entered a final judgment on the merits in the NJ Coverage Action based on its conclusion that "the defamatory statements that are alleged in [Orchestrate's] complaint clearly could be construed to be ones that arose out of that providing those professional services."  *See* Pl. Ex. V, ECF No. 80-25; Pl. Ex. R at 12:17-13:2, ECF No.

---

[2] Because Defendants seek to apply the doctrine of collateral estoppel as it pertains to a prior New Jersey state court decision, the Court applies New Jersey's law on issue preclusion.  *See Hart*, 2022 WL 1963666, at *2 n.2 (citing *Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir. 1987) ("The federal court, in determining the collateral estoppel effect of a state court proceeding, should apply the law of the state where the . . . proceeding took place . . . .")).

80-21. The Appellate Division affirmed, also concluding that "[v]iewing Orchestrate's pleadings with liberality, as we must when determining an insurer's duty to defend, . . . the defamation [allegations] . . . may potentially arise out of negligent misleading and false statements made during the course of rendering services to various clients." *Borden-Perlman Ins. Agency, Inc.*, 2016 WL 1368589, at *4. Accordingly, the Court finds that Republic had a full and fair opportunity in the NJ Coverage Action to litigate the issue of whether the complaints in the underlying Texas lawsuit contain allegations that B-P made the defamatory statements in the course of rendering professional insurance services. *See Peloro*, 488 F.3d at 175 ("For defensive collateral estoppel—a form of non-mutual issue preclusion—to apply, the party to be precluded must have had a 'full and fair' opportunity to litigate the issue in the first action."). The doctrine of issue preclusion therefore bars Republic from relitigating the issue against Travelers here.

Even if Republic were not barred from relitigating the issue, the Court finds that the underlying complaints describe B-P making the defamatory statements in the course of rendering professional insurance services to clients or potential clients. Orchestrate's initial complaint alleges that B-P and Orchestrate provided insurance products to the same target market, and that when Trombetta resigned and joined B-P, he and B-P pursued Orchestrate's clients, including those clients for whom Trombetta had done work when he was an Orchestrate employee. *See generally* Def. Ex. A, ECF No. 80-4. Trombetta and B-P allegedly advised Orchestrate's clients that Orchestrate was poorly performing certain insurance services, such as using incorrect forms and processing claims incorrectly, which caused the clients to express uncertainty about renewing their contracts with Orchestrate. *Id.* ¶¶ 34-36. Orchestrate amended its initial complaint twice, such that the Second Amended Complaint alleges that B-P made the defamatory statements "in the course of their business" and while "performing insurance services." Def. Ex. C ¶ 58, ECF No. 80-6. More specifically, B-P allegedly made the defamatory statements during conference calls with certain clients to discuss the renewal of their insurance policies. *Id.* ¶¶ 54-58.

Republic urges the Court to characterize this alleged conduct as B-P engaging in "business competition," or commercial activity distinct from the rendering of professional services. Pl. Mov. Br. at 14, ECF No. 81-1. In doing so, Republic relies first on *Warfield-Dorsey Co., Inc. v. Travelers Cas. & Sur. Co. of Ill.*, 66 F. Supp. 2d 681 (D. Md. 1999). Pl. Mov. Br. at 14-15, ECF No. 81-1. There, the court found that a professional services exclusion did not apply to bar coverage in an underlying action where one insurance broker sued another insurance broker for making disparaging remarks to clients or potential clients that the plaintiff-broker would be out of business in six months and could not handle its business. *Warfield-Dorsey Co., Inc.*, 66 F. Supp. 2d at 687. The court did not define or discuss the meaning of the term "professional services," but nonetheless concluded that "none of the allegations can be considered as charging [defendant] with failing to discharge or improperly discharging an obligation or duty respecting a contract of insurance." *Id.* at 690. Republic relies next on *Atlantic Lloyd's Ins. Co. Tex. v. Susman Godfrey, L.L.P.*, 982 S.W.2d 472 (Tex. App. 1998), in which the court found that a professional services exclusion did not apply to bar coverage in an underlying action against an attorney who sent a solicitation letter

to a prospective client. The attorney's potential liability arose from allegedly defamatory statements contained in the letter, which itself did not provide any legal advice and was rather an invitation to the recipient to contact the attorney's firm about the possibility of representation. *Id.* at 477-78. The court found that the attorney's solicitation of clients was therefore not a "professional service" requiring "the specialized skills particular to the legal profession," but was merely "a practice designed to acquire new business," which was "incidental to [rendering] professional services." *Id.* Republic relies last on *Feszchak v. Pawtucket Mut. Ins. Co.*, 316 F. App'x 181, 182-83 (3d Cir. 2009), in which the Court of Appeals for the Third Circuit found that a professional services exclusion did not apply to bar coverage of claims against a hospital for failing to maintain a stationary exercise bicycle that resulted in an injury. The Third Circuit stated that the definition of "professional service" is limited "to 'one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual.'" *Id.* (quoting *Harad v. Aetna Cas. and Sur. Co.*, 839 F.2d 979, 984 (3d Cir. 1988)). In that regard, the Third Circuit found that the hospital's failure was "manual or physical" and "no different than that caused by loose carpeting or a visitor's chair with a broken leg." *Id.* The professional services exclusion in the policy therefore did not apply to bar coverage of the claims. *Id.* at 183.

While these cases demonstrate that not every act or service falls within the scope of a "professional service," as that term is defined in an insurance policy, these cases do not compel the Court to characterize the underlying allegations as merely arising from commercial activity or the solicitation of new business. Orchestrate's allegations quite clearly show that its claims focused on B-P's provision of professional services, such as advising or making recommendations to clients or potential clients about insurance services. Such claims fall within the scope of Republic's E&O Policy, but they are excluded from Travelers' CGL Policy under the Financial Professional Services Exclusion. Travelers, therefore, had no duty to defend B-P against Orchestrate's claims in the underlying Texas lawsuit and, consequently, Republic is not entitled to reimbursement for the defense costs and settlement costs it incurred on B-P's behalf. Travelers' motion for summary judgment will accordingly be granted, and Republic's motion for summary judgment will be denied.

### V. CONCLUSION

For the reasons set forth above, Republic's motion for summary judgment, ECF No. 81, is **DENIED** and Travelers' motion, ECF No. 80, is **GRANTED**. Republic's Complaint is therefore **DISMISSED** with prejudice.

An appropriate Order shall follow.

                                                /s/ William J. Martini
                                       **WILLIAM J. MARTINI, U.S.D.J.**

**Date:  July 6, 2022**